Edward JOHN et al.,
Appellants-Plaintiffs,

v.

KAEMMERLEN ELECTRIC COMPANY,
Respondent-Defendant.

No. 41560.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 19, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 18, 1980.

Sidney Fortus, Fortus & Anderson, Clayton, for appellants-plaintiffs.

Joseph H. Mueller, J. C. Jaeckel, Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, St. Louis, for respondent-defendant.

GUNN, Presiding Judge.

Plaintiff-appellant appeals from a judgment of the St. Louis Circuit Court directing a verdict in favor of defendant-respondent in a personal injury action. Viewing the evidence in the light most favorable to plaintiff, we find no actionable negligence against defendant and affirm.

Plaintiff at the time of the injury was employed as a wireman for Union Electric Company in St. Louis. He and a fellow Union Electric employee had been assigned the task of making a connection between non-energized wires installed by the defendant for service to a private building and Union Electric's energized wires extending from the latter's utility pole and transformer. The wires which defendant had installed atop the building roof were strung from two pipes or masts to give them sufficient height so that when connected with the Union Electric wires there would be adequate clearance between them and the ground and trafficway below. The two masts were given support by a metal plate connected to and serving as a base between them. While there was some disputation as to whether the masts were constructed to give adequate clearance between the wires and the ground below, that fact had absolutely no bearing on the accident which resulted in plaintiff's injury.

**644**

Plaintiff had climbed a ladder to the roof of the building to connect Union Electric's energized or "hot" wires to the non-energized wires which defendant had installed. As plaintiff was making the connection and holding the wires together, his co-worker was applying tape to them causing them to oscillate. According to plaintiff's best evidence, the oscillating motion caused the wires to come in contact with the rough edge of the metal brace supporting the two masts, and a grounding apparently occurred with a resultant explosion hurling plaintiff to the ground, breaking his heels and causing burns to his face and body. No electricity passed through his body. Plaintiff's evidence further established that he knew that by working with Union Electric's "hot" wires in making the connection that if a grounding occurred within the wires, an explosion such as happened would result; that the Union Electric wires could have been de-energized although some customer inconvenience might result; that the conditions that existed as a result of defendant's work were not dangerous or extraordinary.[1]

At the close of the plaintiff's evidence the trial judge granted defendant's motion for directed verdict. After reviewing the evidence most favorable to plaintiff, we agree with the trial court that plaintiff failed to make a case of primary negligence against defendant. The trial court was correct in sustaining defendant's motion for directed verdict. *See: Donovan v. Union Electric Company,* 454 S.W.2d 623 (Mo.App.1970). An extended opinion would have no prece-dential value, and judgment should be affirmed in accordance with Rule 84.16.

Judgment affirmed.

STEPHAN and PUDLOWSKI, JJ., concur.

---

1. Clarence Wiedner, plaintiff's Union Electric co-worker, testifying for the plaintiff related:

 Q. And you could see how the mast was fastened to the plate?
 A. [Mr. Wiedner] Yes.
 Q. And you could see the six wires hanging down?
 A. Yes.
 Q. In short, Mr. Wiedner, there was nothing at all that was concealed about the condition of the—
 A. No, not concealed.
 Q. * * *

 There was nothing concealed about the condition of the premises when you arrived there, was there, Mr. Wiedner, when you got up on top?

 A. No.
 Q. You could just simply look and see where things were? Right?
 A. Yes.
 Q. Did you consider any condition that you saw that morning when you got up on the roof to be dangerous or out of the ordinary?
 A. I *didn't.*
 Q. All right. If you did you obviously would have either said something to yourself or Mr. John, would you not?
 A. Yes.

 *   *   *   *   *   *

 Q. In any event, you didn't find anything that was dangerous or out of the ordinary that morning, did you?
 A. I didn't see any.